**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHRISTOPHER J. BRISTOL,**

                           **Petitioner,**

          **v.**                                **9:04-CV-1230**
                                                     **(FJS)**

**SUPERINTENDENT,**

                          **Respondent.**
_____

**APPEARANCES**                          **OF COUNSEL**

**CHRISTOPHER J. BRISTOL**
**99-B-2925**
Attica Correctional Facility
Box 149
Attica, New York 14011
Petitioner _pro se_

**OFFICE OF THE NEW YORK**         **KIMBERLY TERIKA MORGAN, AAG**
**STATE ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondent

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      The Clerk of the Court has sent Petitioner Christopher J. Bristol's petition for a writ of

_habeas corpus_ pursuant to 28 U.S.C. § 2254 to the Court for its review.  _See_ Dkt. No. 1.

      On November 22, 1999, Petitioner was convicted of first degree attempted rape, _see_ N.Y.

Penal Law § 110.00/135.35(1), (3) (two counts), first degree sexual abuse, _see_ N.Y. Penal Law

§ 130.65(1), (3) (two counts), and endangering the welfare of a child, _see_ N.Y. Penal Law

§ 260.10(1).  *See* Dkt. No. 1, Petition, at 1; Transcript of Trial of Christopher J. Bristol ("Trial

Tr."), dated October 8, 1999, at 78-80.  The New York Supreme Court, Appellate Division,

Fourth Department, affirmed the convictions on December 30, 2002.  *See People v. Bristol*, 300

A.D.2d 1059 (4th Dep't 2002).  On July 10, 2003, the New York Court of Appeals denied

Petitioner leave to appeal.  *See People v. Bristol*, 100 N.Y.2d 579 (2003).[1]

Petitioner raises the following grounds for *habeas* relief: (1) there was insufficient proof

to establish a chain of custody to support the admission of the victim's underwear into evidence;

(2) the trial court improperly permitted the prosecutor to read into evidence portions of

Petitioner's grand jury testimony and failed to conduct a hearing on whether the probative value

of this evidence was outweighed by its prejudicial effect; (3) trial counsel was ineffective for

failing to object to the admission into evidence of the underwear and items found on the

underwear; and (4) the sentence imposed was excessive.  *See* Dkt. No. 1, Petition at 6-11.[2]


## II. BACKGROUND

**A.      Facts**

Accordingly to the testimony adduced at trial, M.U.[3] was ten years old in April 1999.  *See*

Trial Tr., dated October 6, 1999, at 2, 10, 100.  On April 2, 1999, M.U. went to her friend A.D.'s

home for an overnight visit.  *See id.* at 14-17.  Petitioner is A.D.'s step-father.  *See id.* at 13.

---

[1] Petitioner did not provide a copy of his leave application to this Court.

[2] The Court will consider Petitioner's claims out of order for the sake of clarity.

[3] Since the victim is a minor child, the Court will refer to her by her initials or as "the victim."  *See* N.Y. Civ. Rights Law § 50(b).  The Court will also refer to the victim's friend, who was six years old at the time of this incident, by her initials.

M.U. wore black jeans, shorts under the jeans, a T-shirt, sweatshirt, socks and underwear. *See id.* at 20.

Petitioner prepared pizza pockets for the girls to eat. *See id.* at 17. After dinner, A.D. gave the victim a nightgown to wear to sleep, and the victim put it on. The girls played in A.D.'s bedroom until Petitioner called the girls downstairs, where they watched cartoons. *See id.* at 21-24, 47.

Petitioner inserted into the video cassette recorder a tape that depicted two females "humping each other." *See id.* at 21, 49, 153. A.D. almost immediately returned to her room, leaving the victim and Petitioner watching the movie. *See id.* at 21, 49-50. The victim eventually left Petitioner. *See id.* at 23-24. She went to A.D.'s room and put her jeans and other clothing back on because she "wanted to go home." *See id.* at 24-25, 58. The victim joined A.D. in her bed and fell asleep. *See id.* at 26, 59.

Petitioner entered the bedroom, woke the victim, and told her to go to his bedroom. *See id.* at 26-28, 61. Petitioner followed the victim into the bedroom and ordered her to lie on his bed. *See id.* at 29. Petitioner removed the victim's pants, shorts and underwear and then pulled his pants and underwear down to his knees. *See id.* at 30-32, 61. He lay down next to the victim, facing her back. He touched her "behind" with his penis. *See id.* at 34. While the victim lay on her back, Petitioner "hurt" her by "humping" her vaginal area with his penis. *See id.* at 34-35. The victim pushed on Petitioner's shoulders with both of her hands in an attempt to stop him, but she was unsuccessful. *See id.* at 36-38, 78-80. Petitioner warned the victim that "whatever happens at my [Petitioner's] house stays in my house." *See id.* at 154.

The doorbell rang, and Petitioner went downstairs to answer the door. *See id.* at 38-39,

154.  The victim's grandfather, Robert Lipphardt, Sr., was at the door.  *See id.*  The victim's

fifteen-year-old sister was also present.  Mr. Lipphardt asked Petitioner if the victim's sister could

use his bicycle.  *See id.* at 85-86.  The victim heard her grandfather's voice and yelled downstairs

for him to wait.  *See id.* at 39, 68, 88.  The victim put on her underwear and shorts, ran down the

stairs past Petitioner and her grandfather, and ran to her sister.  *See id.* at 39, 89, 94.  The victim

told her sister that Petitioner tried to "kill" her and that he "tried raping her."  *See id.* at 105-06.

The victim was crying and stated that she wanted to go home.  *See id.* at 112.  After a brief

conversation between Petitioner and Mr. Lipphardt, Petitioner shut the door in Mr. Lipphardt's

face and refused to answer it when Mr. Lipphardt knocked.  *See id.* at 90-91, 107-08.  Mr.

Lipphardt called the police and took the victim to the hospital.  *See id.* at 91-93.

The victim changed most of her clothing before going to the hospital, but she kept on the

same underwear.  *See id.* at 42, 94-95, 100.  The police collected the victim's underwear before

she was treated.  *See id.* at 112-128, 132-35, 136-37, 182-98; Trial Tr., dated October 7, 1999, at

14-23.  The victim was examined at the hospital and a rape evidence kit was prepared.  The

examination showed redness in the perineal area, which is usually caused by "some kind of

irritation or contact."  *See id.* at 123.  The redness subsided in the hour that passed between the

initial examination and the examination by attending emergency room physician Michael

Salvana.  *See* Trial Tr., dated October 7, 1999, at 9-11.

The rape kit and the victim's underwear were secured and sent to the New York State

Police Forensics Investigations Center.  *See* Trial Tr., dated October 6, 1999, at 112-28, 132-35,

136-37, 182-98; Trial Tr., dated October 7, 1999, at 14-23.  Dr. Alison Eastman, a serologist and

DNA analyst, found a fingernail, a hair and a blue cloth fiber inside the underwear.  *See* Trial Tr.,

dated October 7, 1999, at 24-50. Melissa Lee, a forensic scientist, performed a DNA analysis of the hair and fingernail. *See id.* at 57-76. The fingernail matched the victim's DNA, and the hair matched Petitioner's DNA. *See id.* at 67-68, 70. Fingernail scrapings taken from the victim's right hand also matched Petitioner's DNA. *See id.* at 67-69. Ms. Lee noted that it is very difficult for DNA to be lodged under fingernails, making its presence under the victim's nails indicative of a possible "struggle." *See id.* at 74-75.

On April 5, 1999, Petitioner voluntarily accompanied Investigator Steven Conley of the Oneida County Sexual Abuse Task Force to the police station. Petitioner was given his *Miranda*[4] warnings, and Petitioner agreed to make a statement. *See* Trial Tr., dated October 6, 1999, at 142-50. He told Investigator Conley that the victim came downstairs while he was watching a pornographic movie and masturbating and that she told him she wanted to watch the movie because "she learns things from them." He stated that, although he thought about engaging in sexual intercourse with the victim, he did not do so because he knew that he "would get into trouble." *See id.* at 151-55. Petitioner gave the pornographic tape to Investigator Conley. *See id.* at 155-56. He was arrested two days later on April 7, 1999. *See id.* at 163, 172.

**B.      State-Court Proceedings**

On April 20, 1999, Petitioner voluntarily appeared before an Oneida County grand jury and reiterated much of his written statement to police. *See* Trial Tr., dated October 7, 1999, at 77-100. On April 29, 1999, the grand jury returned an indictment charging Petitioner with two counts of attempted first degree rape, *see* N.Y. Penal Law §§ 110.00/130.35(1) (attempted sexual

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

intercourse with a female less than eleven years old), §§ 110.00/135(3) (attempted sexual

intercourse with a female by forcible compulsion); two counts of first degree sexual assault, *see*

N.Y. Penal Law § 130.65(1) (sexual contact with a female by forcible compulsion), § 130.65(3)

(sexual contact with a female less than eleven years old); and endangering the welfare of a child),

*see* N.Y. Penal Law § 260.10(1).

Oneida County Court Judge Barry M. Donalty presided over Petitioner's trial proceedings.

After holding a *Huntley*[5] hearing, the trial court issued a Decision and Order on June 8, 1999,

denying the motion to suppress Petitioner's statement to Investigator Conley.

Prior to trial, defense counsel brought a motion *in limine* requesting the redaction of

specific portions of Petitioner's grand jury testimony (at pages 51, 55, 56, 69, 70, 71, 73).  The

challenged portions contained Petitioner's own references to past sexual crimes and problems.

Counsel argued that these references were "extremely prejudicial."  *See* Transcript of Hearing on

Redaction ("Redaction Tr."), dated October 4, 1999,at 6-12.  The trial court granted the motion in

part and redacted Petitioner's direct references to his prior criminal record and subsequent

punishment.  *See id.* at 10-12.  It denied the motion to redact other portions of the testimony,

finding that those portions were part of Petitioner's voluntary narrative and that redacting them

would render Petitioner's testimony "disjointed" and meaningless.  *See id.* at 6-9.

A jury trial occurred from October 5-8, 1999.  The jury convicted Petitioner of all counts

of the indictment.  *See* Trial Tr., dated October 8, 1999, at 78-80.  On November 22, 1999,

---

[5] *People v. Huntley*, 15 N.Y.2d 72 (1965).  A *Huntley* hearing is conducted to determine whether a defendant's statements to the police must be suppressed on the ground that he was subjected to custodial interrogation without the warnings required under *Miranda v. Arizona*, 384 U.S. 436 (1966).  *See Harris v. New York*, 202 F. Supp. 2d 3, 4 & n.3 (S.D.N.Y. 2001); *see also* N.Y. Crim. Proc. Law ("CPL") § 710.

Petitioner appeared before Judge Donalty for sentencing.  *See* Transcript of Sentencing ("Sentencing Tr."), dated November 22, 1999.  Defense counsel moved to set aside the verdict, claiming that Petitioner suffered prejudice based upon the trial court's ruling that permitted the prosecutor to read portions of Petitioner's grand jury testimony during trial.  *See id.* at 2-3.  The court denied that motion.  *See id.*  The court sentenced Petitioner as a second violent felony offender to an aggregate determinate term of fifteen years in prison followed by five years of post-release supervision.  *See id.* at 10-11.


**C.    Proceedings in this Court**

On or about October 5, 2004, Petitioner filed a *pro se* petition in the United States District Court for the Western District of New York seeking a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  *See* Dkt. No. 1.  The case was transferred to this District by Order dated October 20, 2004.  *See* Dkt. No. 3.  In an Order dated November 24, 2004, this Court directed Respondent to file his response to the petition.  *See* Dkt. No. 5.  On February 10, 2005, the Office of the Attorney General of the State of New York, acting on Respondent's behalf, filed a motion to file a response, memorandum of law, and the relevant state-court records under seal due to the nature of the charges at issue in this case and the victim's age.  *See* Dkt. Nos. 11-12.  By Order dated February 14, 2005, the Court granted that motion.  *See* Dkt. No. 13.  Respondent filed his response and memorandum of law in opposition to the petition, along with the relevant state-court records, under seal on February 22, 2005.  On April 16, 2005, Petitioner filed a Traverse. *See* Dkt. No. 16.

## III. DISCUSSION

**A.    Standard of review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

court may not grant *habeas* relief to a state prisoner on a claim unless the state courts adjudicated

the merits of the claim and such adjudication either

> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA also requires that in any such proceeding "a determination of a factual issue

made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C.

§ 2254(e)(1).

A state court determines a petitioner's federal claim "on the merits" and triggers the

highly-deferential AEDPA standard of review when the state court "(1) disposes of the claim 'on

the merits,' and (2) reduces its disposition to judgment."  *Sellan v. Kuhlman*, 261 F.3d 303, 312

(2d Cir. 2001).  In this regard, it is not necessary for the state court to refer explicitly to the

particular federal claim or to any federal case law.  *See id.*

If, however, a state court does not adjudicate a petitioner's federal claim "on the merits,"

the state court's decision is not entitled to AEDPA deference and, instead, the federal *habeas*

court must apply the pre-AEDPA standard of *de novo* review to the state court's disposition of

the federal claim.  *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001)).

**B.      Petitioner's state evidentiary claims**

Petitioner raises two claims in his petition relating to the admission of evidence at trial. First, Petitioner complains that the trial court erred when it admitted into evidence the victim's underwear because the prosecutor failed to establish an adequate chain of custody.  *See* Dkt. No. 1, Petition, at 5, 7 (Ground One); Dkt. No. 16, Traverse, at 1-5.  Second, Petitioner complains that the trial court abused its discretion when it permitted the prosecutor to read portions of Petitioner's grand jury testimony relating to past sexual crimes into evidence in her direct case because the trial court did not conduct a hearing, in violation of the "C.P.L.," to address whether the probative value of the grand jury testimony was outweighed by its prejudicial effect.  *See* Dkt. No. 1, Petition, at 9-11 (Grounds Three and Five).

Respondent argues that these claims are unexhausted because Petitioner did not fairly present the federal nature of the claims to the state courts, are not cognizable on federal *habeas* review, and are without merit.  *See* Respondent's Memorandum at 8-17.

*1. Exhaustion*

A court may not grant an application for a writ of *habeas corpus* until the prisoner has exhausted all remedies available in state court unless there is an "absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B).  To satisfy the exhaustion requirement, a

petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a

petitioner raise all claims in state court prior to raising them in the *habeas corpus* petition.

Substantive exhaustion requires that a petitioner "fairly present" any constitutional claims to the

highest state court in the same factual and legal context in which they appear in the *habeas*

petition.  *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted); *Fama v. Comm'r of*

*Corr. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000) (citation omitted); *Dorsey v. Kelly*, 112 F.3d 50,

52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d

438 (1971)).

> To establish that a federal claim was raised in state court, a
> petitioner must, in the state courts, (1) have relied on federal case
> law employing federal constitutional analysis; (2) relied on
> factually similar state cases employing federal constitutional
> analysis; (3) asserted the claim "in terms so particular as to call to
> mind a specific right protected by the Constitution"; or (4) alleged
> a set of facts well within ordinary constitutional litigation.

*Stone v. Stinson*, 121 F. Supp. 2d 226, 236 (W.D.N.Y. 2000) (citing *Daye [v. Atty. Gen. of New*

*York*, 696 F.2d 186,] 194 [(2d Cir. 1982)]).

The requirement that the petitioner have given the state court a reasonable opportunity to pass on

the federal *habeas* claim is satisfied if the legal basis of the claim made in state court was the

"substantial equivalent" of that of the *habeas* claim.  *Picard v. Connor*, 404 U.S. 270, 278 (1971)

(citations omitted); *Daye v. Atty. Gen. of New York*, 696 F.2d 186, 189-90 (2d Cir. 1982).  A

claim is deemed exhausted when no real avenue remains by which the petitioner could raise it.

*See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citation omitted).

Respondent is correct that Petitioner's chain-of-custody and grand-jury-testimony claims

in state court rested entirely on state law.  *See* Respondent's Answer, Exhibit "A," Appellate

Brief, at 30-41.  The record suggests that Petitioner did not alert the state courts to the federal

nature of these claims because the Appellate Division rejected them based solely on state law

without reference to the federal constitution or to federal law.  *See Bristol*, 300 A.D.2d at 1060.

Accordingly, the Court finds that Petitioner did not fairly present these claims to the state courts;

and, therefore, these claims are unexhausted.  *See, e.g., Young v. Hoke*, No. 89 Civ. 2135, 1991

WL 207553, *3-*4 (S.D.N.Y. Oct. 3, 1991) (chain-of-custody claim unexhausted because the

arguments presented in the state courts were framed in the context of state law and never "called

into question the violation of petitioner's federal constitutional rights").

### 2. Procedural bar

There is no longer a state court in which Petitioner can raise the federal nature of these

evidentiary claims.  He cannot now file a direct appeal with the Fourth Department in order to

advance these claims because a defendant is "entitled to one (and only one) appeal to the

Appellate Division . . . ."  *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) (citations omitted).

It would also be futile for Petitioner to raise these claims in a motion to vacate his conviction

pursuant to CPL § 440.10 because the Appellate Division previously decided these claims on the

merits.  *See* N.Y. Crim. Proc. Law §§ 460.10, 460.15, 460.30, 440.10(2)(a).  Since no remaining

avenue exists in which Petitioner could raise these claims, the Court deems them exhausted but

procedurally defaulted.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Aparicio*, 269

F.3d at 90; *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir.

2000) (citation omitted).

Therefore, this Court may review these claims only if Petitioner demonstrates cause for

the default and resulting prejudice or that the failure of the federal court to review these claims will result in a "fundamental miscarriage of justice," i.e., that he is innocent.  *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citations omitted); *Coleman*, 501 U.S. at 748-50.  To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule.  *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999).  When a petitioner fails to establish adequate cause for his procedural default, the court need not determine whether he suffered prejudice because federal *habeas* relief is generally unavailable for procedurally defaulted claims unless the petitioner demonstrates both cause and prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, *6 (N.D.N.Y. Mar. 21, 2006) (citations and footnote omitted).

In an apparent attempt to show cause, Petitioner argues that he did not raise the federal nature of these claims because his appellate counsel was ineffective.  *See* Dkt. No. 16, Traverse, at 6.  Petitioner's bald claim that appellate counsel failed to "do a proper job" when she "failed to put/quote Federal Law Violations" is not pending before this Court because Petitioner did not plead a claim of appellate counsel ineffectiveness in his *habeas* petition.  Moreover, even if Petitioner had included this claim in his petition, the Court would deem it unexhausted because he never raised it in a state *coram nobis* petition; and, because there is no time limit for filing a writ of error *coram nobis* in state court, that procedure remains available as a state remedy.  *See Hust v. Costello*, 329 F. Supp. 2d 377, 379 (E.D.N.Y. 2004) (citation omitted); *Garcia v. Scully*, 907 F. Supp. 700, 706-07 (S.D.N.Y. 1995) (citations omitted).

In any event, the ineffectiveness of counsel for not raising or preserving a claim in state

-12-

court is sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citation omitted); *Aparicio*, 269 F.3d at 91 (citations omitted). Appellate counsel is required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments and is not required to advance every argument that the petitioner urges. *See Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (citation omitted); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *Sellan*, 261 F.3d at 317 (citation omitted). In this case, appellate counsel challenged the admission into evidence of the underwear and Petitioner's grand jury testimony on state-law grounds and may have believed that, by doing so, these claims stood the best chance of success. That decision does not render counsel ineffective. *See United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) (citations omitted). Accordingly, the Court concludes that Petitioner's apparent claim of appellate counsel ineffectiveness may not serve as "cause" for the procedural default. *See Aparicio*, 269 F.3d at 91-92.

Since Petitioner has not established cause for his procedural default, the Court need not decide whether he suffered actual prejudice. *See Stepney*, 760 F.2d at 45 (stating that a petitioner needs to demonstrate both cause and prejudice); *Staley v. Greiner*, No. 01-CV-6165, 2003 WL 470568, *7 (S.D.N.Y. Feb. 6, 2003) (citation omitted); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (citation omitted). Moreover, although Petitioner claims that he is innocent, he has not presented any new evidence that he is "actually innocent" of the crimes for which he was convicted. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995) (holding that to demonstrate actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would

-13-

have found petitioner guilty beyond a reasonable doubt").  Therefore, the Court denies

Petitioner's chain-of-custody and grand-jury-testimony claims on this procedural basis.


### 3. The merits

Even if these claims were not procedurally barred, no relief would be due.  Petitioner's

chain-of-custody and grand-jury-testimony arguments present questions of state evidentiary law

that generally are not amendable to *habeas* review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991) (reemphasizing that "it is not the province of a federal habeas court to reexamine state-

court determinations on state-law questions"); *Allen v. Costello*, No. 03 CV 4957, 2008 WL

89747, *3 (E.D.N.Y. Jan. 7, 2008) (claim that evidence was improperly admitted into evidence

due to gaps in the chain of custody was a challenge to a state evidentiary ruling that did not result

in a fundamentally unfair trial (citations omitted)); *Nowlin v. Greene*, 467 F. Supp. 2d 375, 379

(S.D.N.Y. Dec. 22, 2006) (admissibility of the testimony of prior victims regarding the

petitioner's prior instances of sexual abuse at a trial is a question of state evidentiary law that is

not ordinarily cognizable on *habeas* review); *Tirado v. Senkowski*, 367 F. Supp. 2d 477, 487

(W.D.N.Y. 2005) (holding that the petitioner's "chain of custody argument presents a question of

State evidentiary law that generally is not amendable to habeas review" (citation omitted)).

Federal courts may issue a writ of *habeas corpus* based upon a state evidentiary error only

if the petitioner demonstrates that the alleged error violated an identifiable constitutional right

and that the error was "'so extremely unfair that its admission violates fundamental conceptions

of justice.'"  *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United

States*, 493 U.S. 342, 352, 110 S. Ct. 668, 674, 107 L. Ed. 2d 708 (1990)); *see also Jones v.*

-14-

*Conway*, 442 F. Supp. 2d 113, 130 (S.D.N.Y. 2006) (quotation omitted).  A petitioner "'bears a heavy burden because evidentiary errors generally do not rise to constitutional magnitude.'" *Sierra v. Burge*, No. 06 Civ. 14432, 2007 WL 4218926, *5 (S.D.N.Y. Nov. 30, 2007) (quoting *Copes v. Shriver*, No. 97-2284, 1997 WL 659096, at *3 (S.D.N.Y. Oct. 22, 1997)).  Petitioner cannot meet this burden with regard to either his chain-of-custody or grand-jury-testimony claim.

### a. Chain-of-custody claim

Evidence is admissible under New York law if it accurately portrays a "'relevant and material element of the case.'"  *Archer v. Connell*, No. 06-CV-2961, 2008 WL 434266, *11 (E.D.N.Y. Feb. 14, 2008) (quoting *People v. Julian*, 41 N.Y.2d 340, 342, 392 N.Y.S.2d 610, 360 N.E.2d 1310 (1977)).  The party seeking to admit real evidence must show that the item "'is identical to that involved in the crime'" at issue and that no one has tampered with it.  *Id.* (quoting *Julian*, 41 N.Y.2d at 342-43, 392 N.Y.S.2d 610, 360 N.E.2d 1310).  Real evidence may consist of fungible items that are not readily identifiable and easily altered or non-fungible items, such as clothing, that possess unique characteristics that are not subject to undetected alteration.  A fungible item's authenticity may be established by a chain of custody that begins from the time the object came under the control of the police to its admission at trial.  *See id.* (citing *McGee*, 49 N.Y.2d at 59, 424 N.Y.S.2d 157, 399 N.E.2d 1177) (other citation omitted).  A chain of custody is not necessary to establish the authenticity of a non-fungible item, however, because the authenticity of such an item may be established by a witness' identification of it.  *See Jones v. Spitzer*, No. 01 Civ. 9754, 2003 WL 1563780, *37 (S.D.N.Y. Mar. 26, 2003) (citations omitted), *report and recommendation adopted*, 2005 WL 167605 (S.D.N.Y. Jan. 25, 2005), *aff'd sub nom*,

-15-

*Jones v. Cuomo*, 254 Fed. Appx. 6 (2d Cir. 2007) (summary order).[6]

In this case, the victim's underwear, a non-fungible clothing item, was readily capable of identification. The victim unequivocally identified the underwear admitted at trial as the same pair that she was wearing on the night of the assault. *See* Trial Tr., dated October 6, 1999, at 43, 63. That testimony alone was sufficient to permit the item's admission at trial. *See Archer*, 2008 WL 434266, at *11 (citations omitted); *Jones*, 2003 WL 1563780, at *37 (quotation omitted).

In any event, the record supports the Appellate Division's decision that an adequate chain of custody was established to support the admission of the victim's underwear and the hair and fingernail found inside it. *See Bristol*, 300 A.D.2d at 1060. The victim testified that, after the incident, she put her underwear and shorts back on. *See* Trial Tr. at 39, 42, 63, 66, 77. Mr. Lipphardt testified that, although his wife helped the victim change into a dress before going to the hospital, she wore the same underwear. *See id.* at 100.

Police records indicate that Officer DiMaggio collected the underwear on April 2, 1999, at 11:20 p.m. and that the underwear was secured in a bag with staples and placed into a small cardboard box. *See id.* at 192-93. Vernie Pritchard, the nurse who initially examined the victim, testified that she did not personally secure the victim's underwear but noted that the Rome Police

_____

[6] *See also People v. Lorenzo*, 224 A.D.2d 924, 924 (4th Dep't) (holding that "the People were not required to establish a chain of custody of [a 1921 silver dollar encased in cardboard] because it was not fungible" (citations omitted)), *lv. denied*, 88 N.Y.2d 967 (1996); *People v. Hill*, 220 A.D.2d 927, 928 (3d Dep't 1995) (holding that "strict proof of the chain of custody was not required because clothing is not fungible" (citations omitted)); *People v. Love*, 187 A.D.2d 1030, 1031 (4th Dep't 1992) (rejecting the defendant's chain-of-custody argument, finding that the victim's clothing was non-fungible and that, therefore, identification "was sufficient evidence of accuracy and authenticity" (citations omitted)), *lv. denied*, 81 N.Y.2d 888 (1993); *People v. Wynn*, 176 A.D.2d 375, 377 (3d Dep't 1991) (chain of custody not necessary where stolen clothing was non-fungible and "specifically identifiable by its color [and] style").

Department collected the underwear.  *See id.* at 121, 128, 134-37.  Dr. Michael Salvana testified

that Ms. Pritchard's notes indicated that she secured the victim's underwear and other clothing

and gave them to the Rome Police Department.  *See* Trial Tr., dated October 7, 1999, at 8.

Officer Jay DiMaggio testified that he received the victim's clothing, including her underwear,

from Ms. Pritchard in the emergency room desk area.  *See* Trial Tr., dated October 6, 1999, at

190-97.  He identified the underwear as that which Ms. Pritchard handed him and as that secured

in the evidence bag.  Officer DiMaggio took the underwear and other clothing to the police

department and secured them in an evidence locker in the shift commander's office.  *See id.* at

193-94.  He testified that he did not alter or change the underwear in any way.  *See id.* at 194.

Finally, Officer Joseph Mastraccio, Jr. testified that he took custody of the clothing on April 3,

1999, and that he packaged everything but the socks and sent the items by United Parcel Service

("UPS") to the New York State Police Crime Lab.  *See* Trial Tr., dated October 7, 1999, at 15-22.

He also identified the underwear as that secured inside the evidence locker and testified that the

underwear had not been altered or disturbed.  *See id.* at 21-23.

Although the victim testified before the grand jury that she did not wear her underwear

home from Petitioner's house, she explained at trial that she was mistaken.  *See id.* at 63, 66-67.

Petitioner is also correct that Ms. Pritchard testified that she did not personally collect the

underwear, even though other witnesses testified that she did.  Those discrepancies, however,

under both state and federal law, go to the weight of the evidence, not to its admissibility.  *See*

*Gonzales-Pena v. Herbert*, 369 F. Supp. 2d 376, 387 (W.D.N.Y. 2005) (citation omitted);

*Cassells v. Ricks*, No. 99 Civ. 11616, 2000 WL 1010977, *7 (S.D.N.Y. July 21, 2000) (quoting

*United States v. Hon*, 904 F.2d 803, 810 (2d Cir. 1990) ("Once the exhibits were admitted into

evidence, the alleged defects in the government's chain of custody proof were for the jury to evaluate in its consideration of the weight to be given to the evidence.")) (other citations omitted); *Howard v. Keane*, No. CV-91-0723, 1991 WL 352488, *2 (E.D.N.Y. Dec. 9, 1991) (finding chain-of-custody issue not cognizable on *habeas* review and without merit; whether the packets introduced at the petitioner's trial and analyzed as cocaine were the packets seized was a jury question). In this case, a reasonable jury could have concluded that the prosecution established a complete chain of custody for the underwear or, at the very least, could have been reasonably assured of its identity and unchanged condition. Therefore, the Court concludes that this claim provides no basis for *habeas* relief.

### b. Grand jury testimony[7]

Under New York and federal law, evidence of prior crimes or bad acts is admissible where it is relevant to an issue other than the defendant's propensity to commit the crime with which he is charged. New York and federal courts frequently admit evidence of prior bad acts, including uncharged crimes, "as background material and to 'complete the narrative of events.'"

---

[7] Petitioner does not claim that the admission at trial of his grand jury testimony was, as a whole, improper. Indeed, "there was no error under New York state law or federal law in introducing [Petitioner's] grand jury testimony because a party's admissions constitute an exception to the hearsay rule." *Bethune v. Superintendent, Bare Hill Corr. Facility*, 299 F. Supp. 2d 162, 165 (W.D.N.Y. 2004) (citation omitted). The record establishes that Petitioner's grand jury testimony was voluntary, that he was represented by and consulted with an attorney, who was present during his testimony, and that he waived immunity. *See* Trial Tr., dated October 7, 1999, at 76 (referring to pages 40-47 of Petitioner's grand jury testimony on April 20, 1999). The waiver of immunity contemplated the use of his grand jury testimony at trial. *See Bethune*, 299 F. Supp. 2d at 165 (citation omitted); *People v. Thomas*, 300 A.D.2d 1034, 1035 (4th Dep't 2002) (grand jury testimony admissible in case in chief where defendant waived immunity, which contemplated the use of his grand jury testimony in a later proceeding), *lv. denied*, 99 N.Y.2d 633 (2003).

-18-

*Charles v. Fischer*, 516 F. Supp. 2d 210, 217 (E.D.N.Y. Sept. 27, 2007) (quoting *People v. Till*,

87 N.Y.2d 835, 836-37, 637 N.Y.S.2d 681, 661 N.E.2d 153 (1995) ("[S]uch evidence may be

allowed when, as here, it bears on the motive and state of mind in relation to an avoidance of

apprehension during immediate flight from a crime and is found to be 'needed as background

material' or to 'complete the narrative of the episode'")); *see also United States v. Gonzales*, 110

F.3d 936, 942 (2d Cir. 1997) (holding that evidence of bad acts is admissible under Federal Rule

of Evidence 404(b) if it is "'necessary to complete the story of the crime on trial'" (quotation

omitted)); *Yapor v. Mazzuca*, No. 04 Civ. 7966, 2005 WL 894918, *17 (S.D.N.Y. Apr. 19, 2005)

(noting that "the fact of Yapor's wife's arrest on a drug charge completed the narrative and the

trial court was within its discretion under New York law to admit it" (citations omitted)), *report*

*and recommendation adopted*, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005).  The probative value

of such evidence, however, must outweigh its potential for prejudice.  *See Ballard v. Walker*, 772

F. Supp. 1335, 1342 (E.D.N.Y. 1991) (citing [*People v. Ely*, 68 N.Y.2d 520,] 536[, 503 N.E.2d at

92 (1986)]).

    The Appellate Division rejected Petitioner's grand-jury-testimony claim, finding that the

trial court "properly redacted from defendant's grand jury testimony presented during the People's

case-in-chief any direct reference to defendant's prior convictions or crimes."  *Bristol*, 300

A.D.2d at 1060 (citation omitted).  The record supports that decision, which is entitled to

AEDPA deference.

    After a hearing, the trial court redacted references in Petitioner's testimony that directly

referred to past sexual crimes and the accompanying punishment.  *See* Redaction Tr. at 9-12.

However, the trial court denied defense counsel's motion to redact the following portions of his

testimony, which did not contain overt references to past sexual crimes, because those portions were part of Petitioner's voluntary narrative and redacting them would have rendered Petitioner's testimony "disjointed" and meaningless:

> *And I have had problems in the past, you know, in my mind about this kind of thing*, and I thought, you know, okay, on one side to let her watch it.  But then I was afraid to let her watch it, but at the same time I was afraid not to, because I figured, okay, she saw it, she saw what I was doing.  I'm going to get in a lot of trouble if I just let her do what she wants to do.  Then, you know, maybe she won't say nothing.

*See* Redaction Tr. at 6-9 (emphasis added); Trial Tr., dated October 7, 1999, at 86-87.[8]

> In the meantime, now, the family is, oh, how can I put this the easiest way?  My aunt is married to [the victim's] grandfather's brother, so my uncle by marriage is his brother.  *And they knew that I had a past problem with this type of situation, not related to this, but I had past sexual problems that were like this.  Really no similarities at all, but that I had had those problems.*

*See* Redaction Tr. at 7-8 (emphasis added); Trial Tr., dated October 7, 1999, at 89-90.[9]

> So I called up 911 myself, and I told them, I said, "Look, I have a past problem, sexual problem.  I think that they're misconstruing what happened."  I said, "I didn't do anything.  I want you to know that.  That's why I'm calling you, so you can come over and settle the situation yourself."  I was talking to the police at the time.
>
> *No one came to my house though.  But like I said, she went home, no problem, and what have you.  And I had to call the police back because they came back a second time after banging on my door the first time.  They came back, started banging on my door, and then they started making references to my own sexual indiscretions in the past.*  And I wasn't sure whether or not they were trying to

---

[8] The italicized text indicates the portion of the testimony that defense counsel asked the court to redact.

[9] The italicized text indicates the portion of the testimony that defense counsel asked the court to redact.

say definitely that I tried to do something that night, or not.

*See* Redaction Tr. at 8 (emphasis added); Trial Transcript, dated October 7, 1999, at 90-91.[10]

Although Petitioner repeatedly refers to "problems in the past," "past sexual problems," and "indiscretions" in the portions read to the jury, these revelations do not constitute prior bad acts or crimes. *See People v. Snyder*, 289 A.D.2d 695, 696 (3d Dep't 2001) (holding that the defendant's descriptions of two past incidents, "one in which he was sexually abused and another when he thought about touching a minor in a sexual manner," did not constitute prior bad acts or crimes), *lv. denied*, 97 N.Y.2d 734 (2002). Nor do they imply any predisposition to commit the crimes for which Petitioner was charged. To the contrary, as Petitioner told the grand jury, there were "no similarities at all" between the past problems and this incident. *See* Trial Tr., dated October 7, 1999, at 89-90.

The admitted portions of Petitioner's grand jury testimony further served to complete the narrative. Petitioner explained to the grand jury in these portions of his testimony that, because of his past indiscretions, he was afraid that he would be unjustly accused in this case and that, because of fear, he contacted the police. *See id.* at 90-91. Defense counsel used several portions of Petitioner's grand jury testimony in her summation to suggest Petitioner's innocence. For example, counsel argued that Petitioner had exercised bad judgment when he permitted the victim to watch the pornographic movie but argued that, if he had actually tried to rape her, he would not have called 911 and been anxious for the police to come to his home to confront the victim's family members. *See id.* at 5-6. Under these circumstances, the Court finds that the

---

[10] The italicized text indicates the portion of the testimony that defense counsel asked the court to redact.

Appellate Division's decision that the trial court properly redacted the grand jury testimony did not violate any state evidentiary rule. *See Charles*, 516 F. Supp. 2d at 217; *People v. Plummer*, 36 N.Y.2d 161, 164 (1975); *see also Jones v. Stinson*, 94 F. Supp. 2d 370, 391-92 (E.D.N.Y.) (once the *habeas* court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis), *rev'd on other grounds*, 229 F.3d 112 (2d Cir. 2000). Since the admission of Petitioner's testimony did not render the trial "'so extremely unfair'" as to "'violate fundamental conceptions of justice,'" *Dunnigan*, 137 F.3d at 125 (quotation omitted), the Court denies *habeas* relief on this ground.

To the extent that Petitioner claims that the trial court improperly concluded that the probative value of this evidence was outweighed by its prejudicial impact without a hearing, that claim also fails because that determination is "left to the sound discretion of the trial judge." *Yapor*, 2005 WL 894918, at *18 (citing *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)) (other citations omitted). Contrary to Petitioner's claim, the trial court implicitly weighed the probative and prejudicial value of the evidence when it specifically limited the type and amount of Petitioner's references to his past sexual crimes and the accompanying punishment. Since the trial court limited the type and amount of these references it deemed admissible, it did not err in exercising its discretion.

The trial court also mitigated any potential prejudice when it gave extensive limiting instructions preceding and following the testimony. *See* Trial Tr., dated October 7, 1999, at 81-82, 110; *see also Sims v. Stinson*, 101 F. Supp. 2d 187, 203 (S.D.N.Y. 2000) (limiting instructions "substantially mitigate the danger that evidence capable of improper use will undermine the fundamental fairness of the trial" (citations omitted)), *aff'd*, 8 Fed. Appx. 14 (2d

-22-

Cir. 2001) (summary order).  Immediately preceding the testimony, the court advised the jury that certain portions of the grand jury transcript had been redacted and instructed the jury not to "speculate or guess in any way as to the content of the removed portions." *See* Trial Tr., dated October 7, 1999, at 82.  Following the testimony, the trial court instructed the jury that, during the course of the testimony, it had heard Petitioner refer to "prior problems" but that, "under no circumstances[,] are you [the jury] to consider such statements as proof that he committed the crimes charged in this indictment." *See id.* at 110.  The court also instructed the jury that these statements were not proof that Petitioner had a propensity to commit the charged crimes.  *See id.* The jury is presumed to have understood and followed these limiting instructions.  *See Zafiro v. United States*, 506 U.S. 534, 540 (1993) (citation omitted); *Roldan v. Artuz*, 78 F. Supp. 2d 260, 281 (S.D.N.Y. 2000) (quotation and other citations omitted).

Finally, the Court further notes that the evidence at issue would have been admissible under the Federal Rules of Evidence, which "further suggests that the introduction of the evidence did not violate petitioner's due process rights." *Toland v. Walsh*, No. 2-cv-0399, 2008 WL 820184, *13 (N.D.N.Y. Mar. 26, 2008) (citing Fed. R. Evid. 404(b) (evidence of prior misconduct is not admissible to prove bad character, but may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of accident or mistake")) (other citation omitted); *Feliciano v. Berbary*, No. 03 Civ. 4832, 2003 WL 22832638, *3 (S.D.N.Y. Nov. 25, 2003) (holding that "[e]vidence of bad acts is admissible under [Federal Rule of Evidence] 404(b), for example, if it is 'necessary to complete the story of the crime on trial'" (quoting *United States v. Gonzales*, 110 F.3d 936, 942 (2d Cir. 1997))).  Since the admission of the evidence satisfies the Federal Rules of Evidence, it "'will not violate a [state]

-23-

criminal defendant's due process rights or provide a basis for habeas corpus relief.'" *Long v. Donnelly*, 335 F. Supp. 2d 450, 462 (S.D.N.Y. 2004) (quotation and other citations omitted).

In sum, the challenged grand jury testimony was "permissibly offered to complete and contextualize a narrative account of the charged incident . . . ." *Feliciano*, 2003 WL 22832638, at *3. In light of the trial court's limiting instructions, the fact that the prosecutor did not mention either prior crimes or past sexual problems in her summary, *see* Trial Tr., dated October 8, 1999, at 14-34, and the overwhelming evidence of Petitioner's guilty, Petitioner cannot establish that the admission of the grand jury testimony rendered the trial fundamentally unfair. Therefore, the Court dismisses this claim.

**C.      Ineffective assistance of trial counsel**

Petitioner next claims that trial counsel was ineffective for failing to object to the admission of the victim's underwear at trial. *See* Dkt. No. 1, Petition, at 5, 8. Respondent argues that this claim is unexhausted, procedurally barred, and without merit. *See* Respondent's Memorandum at 18-21.

**1. Exhaustion and procedural default**

Petitioner never presented an independent claim to the state courts that trial counsel was ineffective for failing to object to the admission of the victim's underwear on the ground that the chain of evidence was inadequate. In his appellate brief, counsel asserted that trial counsel was ineffective on that ground, but he did so in the context of explaining why the Appellate Division should consider the chain-of-evidence claim when there had been no objection in the trial court.

*See* Appellate Brief at 35.  The Appellate Division decided the chain-of-custody claim on the merits without reference to any procedural bar as the result of counsel's failure to object and did not address any ineffectiveness claim.  *See Bristol*, 300 A.D.2d at 1060.

As noted above, Petitioner cannot now return to state court and fairly present this claim in a second direct appeal because in New York a defendant is "entitled to one (and only one) appeal to the Appellate Division." *Aparicio*, 269 F.3d at 91.  It would also be futile to raise this claim in a motion to vacate his conviction pursuant to CPL § 440.10.  Ineffective-assistance-of-counsel claims that are not "'demonstrable on the main record'" may be properly raised in a section 440 motion, where the necessary record may be developed in an evidentiary hearing.  *Minigan v. Donnelly*, No. 01-CV-0026A, 2007 WL 542137, *17 (W.D.N.Y. Feb. 16, 2007) (quoting *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003)), *report and recommendation adopted*, 2007 WL 981762 (W.D.N.Y. Mar. 30, 2007).  If the errors upon which the ineffectiveness claim is based are "particularly well-established in the trial record," as in this case, however, review of the claim in a section 440 motion will be foreclosed under section 440.10(2)(c), which requires a state court to deny a section 440.10 motion where, although sufficient facts appeared on the record to have permitted adequate review of the issue on direct appeal, the defendant unjustifiably failed to raise the claim on direct appeal.  *See Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (holding that state court's reliance on section 440.10(2)(c) barred *habeas* review of ineffective-assistance claim on trial counsel's failure to object to a jury charge; trial record provided a sufficient basis for the claim, which did not fall within any of the exceptions that New York courts had noted (citation omitted)); *Aparicio*, 269 F.3d at 91, 93 (holding that section 440.10(2)(c) barred *habeas* petition claiming ineffective assistance of trial counsel based on failure to object on double

jeopardy grounds where the petitioner unjustifiably failed to raise the ineffective assistance issue on direct appeal).  Accordingly, since no remaining avenue exists in which Petitioner could raise this claim, the Court deems it exhausted but procedurally defaulted.  *See Coleman*, 501 U.S. at 732; *Aparicio*, 269 F.3d at 90; *Spence*, 219 F.3d at 170.

Petitioner has not established cause for the default or any new evidence that he is "actually innocent" of the crimes for which he was convicted.  *See Schlup*, 513 U.S. at 327. Accordingly, the Court finds that this procedural default bars federal review of Petitioner's ineffectiveness claim.

### 2. The merits

Even if this claim were not procedurally barred, no relief would be due.  To establish ineffective assistance of counsel, a *habeas* petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) prejudice, *i.e.*, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (cited in *Bell v. Cone*, 535 U.S. 685, 695 (2002)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997) (quotation omitted); *White v. Herbert*, No. 9:02-CV-0439, 2006 WL 3728878, *4 (N.D.N.Y. Dec. 15, 2006) (citation omitted).[11]  There is a strong presumption that counsel rendered adequate assistance as courts afford great deference to counsel, and a petitioner "must

---

[11] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  529 U.S. 362, 391 (2000); *see aslo Sellan*, 261 F.3d at 309 (quotation omitted).

overcome the presumption that the challenged action 'might be considered sound trial strategy.'"

*Gatto v. Hoke*, 809 F. Supp. 1030, 1038 (E.D.N.Y.) (quoting [*Strickland*,] 466 U.S. at 689, 104

S. Ct. at 2065) (other citations omitted), *aff'd mem.*, 986 F.2d 500 (2d Cir. 1992); *see also*

*Jackson v. Conway*, 448 F. Supp. 2d 484, 492 (W.D.N.Y. 2006) (citations omitted).

　　　In this case, even if counsel had objected on the ground that the chain of custody was

inadequate, there is no reasonable probability that the underwear, or the evidence collected from

it, would have been excluded at trial.  The victim's identification of the underwear at trial as the

same pair that she wore to Petitioner's home and to the hospital the night of the incident was

sufficient to establish its authenticity.  *See Archer*, 2008 WL 434266, at *11; *Jones*, 2003 WL

1563780, at *37.  Moreover, as noted, the prosecution established a chain of custody sufficient to

provide reasonable assurances that the underwear the victim wore on the night of the incident

was the same underwear introduced into evidence at trial and that its condition was essentially

unchanged.  Counsel cannot now be deemed ineffective for failing to make an argument or

objection that stood little chance of success.  *See Anekwe v. Phillips*, No. 05 CV 2183, 2007 WL

1592973, *7 (E.D.N.Y. May 31, 2007) (holding that "[t]rial counsel's performance may not be

deemed deficient for failing to bring a frivolous motion" (citation omitted)); *Torres v. McGrath*,

407 F. Supp. 2d 551, 562 (S.D.N.Y. 2006) (holding that "'failure to make a meritless argument

does not amount to ineffective assistance'" (quoting *United States v. Arena*, 180 F.3d 380, 396

(2d Cir. 1999))).

　　　More importantly, counsel's failure to object at trial did not result in prejudice because the

Appellate Division addressed the merits of this claim.  *See Escobar v. Senkowski*, No. 02 Civ.

8066, 2005 WL 1307939, *20 (S.D.N.Y. May 26, 2005) ("While the Appellate Division held that

defense counsel failed to preserve a claim . . . the court held in the alternative that, were it to consider the claim, it would have no merit. . . . Consequently, Petitioner cannot make a showing of prejudice, either from defense counsel's failure to preserve the claim, or from appellate counsel's decision not to use defense counsel's failure as a ground for appeal." (internal citations omitted)), *report and recommendation adopted as modified*, 2005 WL 2148712 (S.D.N.Y. Sept. 7, 2005).

The Appellate Division's rejection of this claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent; therefore, the Court denies this claim.

**D.      Sentencing**

Petitioner next contends that the sentence imposed was unduly harsh and excessive.  *See* Dkt. No. 1, Petition, at ¶ 12(D).  It is well-established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation omitted); *Mayerhofer v. Bennett*, No. 9:02-CV-0074, 2007 WL 1624767, *7 (N.D.N.Y. June 6, 2007) (citation omitted).  Petitioner was convicted of two counts each of first degree attempted rape and first degree sexual abuse and one count of endangering the welfare of a child.  The trial court was authorized to sentence Petitioner, as a second violent felon, to a determinate sentence ranging from seven to fifteen years for each count of first degree attempted rape, *see* N.Y. Penal Law §§ 70.02(1)(b); 70.04(1),(3)(b); 110.05(4)/135.35(1),(3); a determinate sentence ranging from five to seven years for sexual abuse in the first degree, *see* N.Y. Penal Law §§ 70.02(1)(c); 70.04(3)(c);

130.65(1),(3); and a definite term not exceeding one year for endangering the welfare of a child, *see* N.Y. Penal Law §§ 70.00(2)(b),(3)(b), 220.16.  Although the court sentenced Petitioner to the maximum term permissible for each crime, to run concurrently, Petitioner's sentence did not exceed the range prescribed by state law.  *See* Sentencing Tr. at 10-11.  Since the imposed sentence was within the statutory range, this theory does not afford Petitioner relief.

To the extent that the Court could arguably view Petitioner's claim as a challenge under the Eighth Amendment's prohibition against cruel and unusual punishment, that claim also fails.  The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction.  *See Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003); *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (citations omitted).  It is well-established that a sentence of imprisonment that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense.  *See White*, 969 F.2d at 1383; *Lou v. Mantello*, No. 98-CV-5542, 2001 WL 1152817, *13 (E.D.N.Y. Sept. 25, 2001) (citation omitted).  "The Supreme Court has held that terms longer than 25 years are not grossly disproportionate to offenses less serious than manslaughter." *Staubitz v. Lord*, No. 03-CV-0671, 2006 WL 3490335, *2 (E.D.N.Y. Dec. 1, 2006) (citing *Ewing v. California*, 538 U.S. 11 (2003) (25 years to life for grand theft); *Harmelin v. Michigan*, 501 U.S. 957 (life in prison without the possibility of parole for possession of cocaine)).  Petitioner's sentence was not contrary to or an unreasonable application of that precedent.  Since the sentence imposed was plainly within the statutorily authorized limits and was not grossly disproportionate to the crimes of which he was convicted, the Court denies this ground of the petition.

## IV. CONCLUSION

Accordingly, after reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the petition for a writ of *habeas corpus* is **DENIED and DISMISSED**; and the Court further

**ORDERS** that no certificate of appealability will issue because Petitioner has failed to make a "substantial showing of a denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment against Petitioner and close this case.

**IT IS SO ORDERED.**

Dated: May 19, 2008
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge